KING, J.,
delivered the opinion of the court.
Plaintiff filed his complaint, demanding damages in the sum of $40,000 alleged to have been sustained on account of the breach of a contract which he alleges was entered into by and between himself and Basil B. Creighton, one of the appellants herein, defendant below. From a judgment for $15,550 defendants appealed.
The complaint is exceedingly voluminous and involved. That portion of the complaint which alleges the cause of action upon which plaintiff supposed he had laid his right *123 to recover, and upon which he tried the case until the court made another issue for the parties, the cause of action which the defendants answered, and against which they made their defense, until the court required both plaintiff and defendants to proceed upon a theory which neither of them had proceeded on, is found in paragraph or subdivision 6 of the complaint, beginning in the 73rd folio thereof. Practically all the preceding allegations of the complaint are nothing more than matters of inducement leading up to and introducing the real cause of action, and explaining the reasons which led to the making of and entering into the alleged agreement stated in subdivision 6. (The cause of action as set forth in said subdivision is, in substance, that, in consideration of the promise of the plaintiff herein to refrain from prosecuting a suit which he had theretofore commenced in the District Court of El Paso County (No. 8422), and to refrain from pressing his objections to a certain assignment made by The Manitou Bathing Company for the benefit of creditors of said company, and to the claims filed against said company in said assignment proceedings, the said Creighton agreed to purchase the property at assignee’s sale; to immediately begin, and complete, a bath house, to cost not less than $30,000, on property belonging to said company, and thereafter convey the said property to a company to be organized by Creighton, with a capital stock of 250,000 shares of $1 each; and that he would issue or cause to be issued to plaintiff 30,000 shares of the stock of said company to be organized, and do and perform certain other acts fully set out and alleged in the complaint; that plaintiff had kept and performed, or was ready to keep and perform, the contract on his part; that Creighton had caused the said company to be organized, conveyed to it all the property mentioned in the agreement, had secured, or had control of, the capital stock; but failed and refused to issue any thereof to the plaintiff, and in other respects failed to comply with the terms of the con *124 tract on his part, to the damage of the plaintiff in the sum of $40,000. The prayer was for judgment in that sum, and that it be made a lien on all the property of The Manitou Bathing Company, and of the new company (The Manitou Mineral Springs Bathing Company), to which the property of the old company, purchased at the assignee’s sale, had been conveyed.
The matters of inducement alleged were, in substance, that in 1905 The Manitou Bathing Company, a corporation, was organized with .a capital stock of $110,000; that the by-laws provided, as a qualification for each person elected as an officer of the company, that he should hold at least 1,000 shares of stock in the company, and that no officer should bé paid a salary until the company should be on a paying basis; that the indebtedness of the company should at no time exceed $15,000, and that a vote of the majority Of the capital stock should be necessary to authorize a mortgage or encumbrance of the property; that in the summer of 1906, one Daniel N. Hitchcock, an acting director, and the president and manager of the said company, falsely represented to the plaintiff that The Manitou Bathing Company was then the owner of a large amount of real estate at Manitou, Colorado, fully paid for and free of encumbrance, of the value of $50,000, which had been conveyed to the company by said Hitchcock, in consideration of the issuance to him of 56,000 shares of the capital stock of said company; that the remaining 54,000 shares had been set aside as treasury stock, to be sold at par, for the erection and equipment of a bath house upon a part of. said real estate; that upon faith in these representations, plaintiff paid to said Hitchcock $21,200 for 21,200 shares of said treasury stock; that the said real estate had not, in fact, been fully paid for, but that much of the money received from plaintiff was used for paying for said real estate, instead of being utilized for the building of a bath house; that from the 7th day of August, 1906, until the 7th day of August, 1907,. Campbell *125 and said Hitchcock constituted two of the board of three directors; that on August 6, 1907, plaintiff, defendant Creighton, and one A. M. Daggett, were elected a board of directors, and that on and after August 6, 1907, the defendant Creighton had knowledge of all the misrepresentations,' deceit and fraud alleged to have been made and practiced by Hitchcock to and upon the plaintiff; that the said Creighton was not at any time the owner, of to exceed 220 shares of stock in said company; that said Hitchcock never in fact paid for the 56,000 shares of stock, or any part thereof, issued to him in consideration of the transfer of said real estate; that on the 10th day of September, 1906, the said Hitchcock and one Stauffer, as directors, voted to borrow $1,500, and gave a trust deed of the company, on the company real estate, to secure the loan, over the protest of the plaintiff, and without authority of a vote of a majority of the. capital stock; that on or about the 15th day of October, 1906, Campbell’s wife, as a stockholder of said company, brought suit in the District Court on behalf of herself and others similarly situated, against the said Hitchcock and The Manitou Bathing Company, 'and the said Stauffer as director, in which suit >The Manitou Bathing Company was made defendant, in order to protect the rights of the company, and stockholders, and because the company refused to bring the action; that in said suit all the representations and fraud perpetrated on the plaintiff, by said Hitchcock, as set forth in this complaint, were set forth, all of which matters, it is said, were fully known to defendant Creighton on and after the 6th day of August, 1907; that said suit proceeded to final judgment, and on the 25th day of January, 1908, resulted in a judgment" against the said Hitchcock, in favor of The Manitou Bathing Company, in the sum of $24,808.59.
That on the 31st day of Miarch, 1908, defendant Creighton and said Daggett, assuming to act as directors’ of the company, made an assignment of the company’s property *126 for the benefit of its creditors to one T. J. Sandford as assignee, in which they claimed the total assets of the company were $15,305.10, and the total liabilities $18,593.18. Extended allegations are then made far the purpose of showing that the assignment proceedings were not valid, and that claims were filed, and allowed by the court, with the knowledge and connivance of said Creighton, that ought not to have been allowed; that while the said assignment proceedings were pending and undetermined, plaintiff herein began a suit in the District Court, being No. 8422, against the said Creighton, Sandford, the old-company ,and others, in which all the things in the instant case, except those set out concerning the agreement,' were alleged, and which asked for an injunction restraining the allowance of the claims by the assignee, and to restrain the assignee from further acting, and alleged that summonses in said suit were served on Creighton, Sandford, and othér defendants, in August, 1908.
We have not undertaken to "state in detail every allegation of the matters of inducement, but in substance sufficient for our present purpose to show the nature of the allegations, and bring the statement of the pleadings up to subdivision 6, which pleads the alleged agreement upon which this suit is predicated.
The defendants’ answer put in issue the misrepresentations alleged to have been made by Hitchcock, and denied that Creighton had knowledge thereof; admitted the assignment and denied its invalidity; admitted, or alleged, the sale of the property thereunder by the assignee for the purpose of paying the claims which had been allowed by the court; the purchase of said property at assignee sale by or for the defendant Creighton; the payment or settlement by Creighton of the company’s debts out of the purchase price for which the property was bid in; the organization of the defendant The Manitou Mineral Springs Bath-ing Company; the transfer by Creighton, or his trustee, to *127 the last named company of all property purchased at the assignee’s sale, for the stock of the new company; denied the agreement alleged in subdivision 6, as well as all the representations alleged to have been made by him, constituting or leading up to said agreement.
After plaintiff had introduced his evidence on the matters of inducement, and to support his cause of action on the agreement, and rested his case, defendants moved for a nonsuit, whereupon the court held that plaintiff had failed to prove the agreement, and that, in fact, the evidence showed the alleged agreement had not been made, but denied the motion for nonsuit, and, over the protest of both plaintiff and defendants, required the trial to proceed upon the issues which the court said were formed upon the allegations of fraud committed by Hitchcock, and Creighton’s knowledge thereof, and stated that the jury would be instructed that the alleged contract had not been proven, and that the jury would not be allowed to take into consideration “any evidence of the negotiations looking toward the making of a contract as alleged in the complaint, except for the purpose of such light, if any, as it may throw upon the knowledge possessed by the defendants, or either of them, of matters preceding the time that it was alleged said contract was entered into.”
In our opinion, the court erred in refusing to grant defendant’s motion for nonsuit after holding that the agreement sued on had not been proven. It is clear that the issues had not been formulated by either party for the purpose of trying the case upon an issue of fraud, except as incidental to the agreement. We think the defendants did not waive the right to object to the trial upon such issues. If the complaint, except upon the agreement, may be held to state any cause of action as against the defendants upon which any judgment could be predicated, we think it does not state a cause of action upon which a personal money judgment against the defendants, or either of them, *128 upon the grounds of fraud alleged in the complaint, can be sustained. The issues were not submitted to the jury for determination upon any other ground than that of fraud, consisting of misrepresentations and deceit. The latter conclusion is made plain by the instructions, particularly instruction No. 6, defining fraud as used in this case. There is no allegation and no proof of any misrepresentations made to the plaintiff by either of the defendants in this case, and no proof of any misrepresentations made to or fraud practiced upon the plaintiff by said Hitchcock or .The Manitou Bathing Company, with the knowledge, consent, or connivance, of the defendants or either of them, at or prior to the time the same were made, nor of which they had knowledge until long after the time that any damage suffered by plaintiff by reason of the misrepresentations, fraud or deceit alleged to have been practiced by Hitchcock had accrued.
But if the complaint be treated as sufficient as a cause of action for fraud, nevertheless, it appears that instructions given over the objections of the appellants are so prejudicially erroneous as to require reversal. The first instruction, which purported to state at length the issues made by the complaint, concludes by stating, as one of the allegations thereof:
“That all of the foregoing matters and things were done by and with the knowledge and consent and approval of said Creighton and the said company for the purpose and with the intent to defraud the said plaintiff, and in furtherance of the false and fraudulent representations made to said plaintiff by the said Hitchcock, and in furtherance of the fraud alleged by the plaintiff to have been practiced upon him by the said Hitchcock.”
The sentence quoted is incorrect and erroneous in this: the matters charged in the complaint as having been done by Hitchcock were done in the’ year 1906. The defendant company was not organized until late in 1908. There is *129 no allegation in the complaint that such matters and things were done with the consent of defendant Creighton, nor that he had knowledge thereof, until on and after August 6, 1907, and no allegation that they were done with his approval, or that of his co-defendant. There is no allegation in the complaint that the matters and things alleged to have been represented by defendant Creighton were false, nor that his acts were done for the purpose or with the intent of defrauding the plaintiff, nor that they were made or done in furtherance of the false and fraudulent representations made to plaintiff by said Hitchcock, nor in furtherance of the fraud alleged by the plaintiff to have been practiced upon him by Hitchcock. One exception may be noted: It- is alleged that defendant Creighton caused
certain capital stock to be transferred to him for the purpose of defrauding plaintiff of any claims or demands plaintiff might have against said Hitchcock or The Manitou Bathing Company. But there is neither allegation nor proof that it accomplished that purpose, nor is there any prayer that such transfer be set aside or held invalid. .This is not a suit against Hitchcock or The Manitou Bathing Company, nor in aid of a suit against them. Such a misstatement of the allegations of the complaint could not be otherwise than prejudicial to the defendants. The seventh instruction, after instructing the jury that the evidence failed to prove the agreement sued upon, further instructed them that the evidence introduced relative to negotiations looking toward the making of the agreement as alleged “may be taken into consideration by you solely and only for the purpose of such light, if any, as it may throw upon the alleged acts and doings of the defendants or either of them,'alleged by the plaintiff to have been done for the purpose of defrauding him.” That portion of the instruction italicized continues and accentuates the error noted in instruction No. 1, as it erroneously assumes that, with the one- exception noted, there were any allegations of any acts *130 done by' defendants or either of them for the purpose of defrauding the plaintiff. Further attention will be called to this instruction later in this opinion.
By instruction 9 the jury were instructed that if they believed an omnibus list of things assumed to be alleged in the complaint, and that the plaintiff was damaged thereby, they should find against the defendants. Among said matters are the following: “That the said directors, including the said Creighton, borrowed $1,500 and gave a trust deed to secure the same upon a part of the said real estate of said Manitou Bathing Company,” etc. There is neither allegation nor proof that the directors, including Creighton, borrowed said money o.r gave a trust deed therefor; in fact, both allegation and proof are that the money was borrowed and the trust deed given long before Creighton became a director. An instruction that impliedly assumes the existence of evidence which was not given is erroneous: Bowling v. Chambers, 20 Colo. App., 113, 122, 77 Pac. 16; Fisk v. Greeley Elec. Lt. Co., 3 Colo. App., 319, 324, 33 Pac. 70. Another: That at said time (August 6, 1907), or at any time the said Creighton was not the owner, of as many as one thousand shares of stock in the said Manitou Bathing Company, and that he could not become a director thereof under the by-laws of said company without being the owner of at least one thousand shares of stock in said company.” There is no allegation in the complaint, nor proof, that under the by-laws the ownership of one thousand shares of stock was a necessary qualification for becoming a director. The allegation was that the ownership of one thousand shares of stock was a necessary qualification for becoming an officer. While the position of director of a private corporation is sometimes spoken of in a géneral way as an “office,” the statute clearly distinguishes between directors who are elected by the stockholders and officers of the corporation who are elected or appointed by the directors. Of such officers, the only one *131 required by statute to be a director is the president. 'The evidence does not disclose that the by-laws made any like qualification as to a mere director, nor that the defendant Creighton held the office of president of The Manitou Bathing Company, or acted as president, or any other officer, in the transactions alleged to have resulted in damage to the plaintiff. But if we concede that the allegations included this qualification for a mere director, the proof here shows that from and after February 7, 1908, Creighton was holder. of 56,220 shares of stock by transfer on the corporate books, and issuance to him of the certificates. It does not appear that the transfer to him was without consideration, nor merely colorable. Therefore, prima facie, he had the right to vote the stock and act as director, even though he was a merely nominal owner — State v. Leete, 16 Nev., 242; Re Argus Printing Co., 1 N. D. 434, 48 N. W. 347, 12 L. R. A. 781, 788, 26 Am. St. 639. The prima facie showing was not overcome by the evidence.
As a part of said instruction 9, the jury were also told that if they believed the defendant Creighton claimed to be the owner of said 56,000 shares of stock of The Manitou Bathing Company, issued to Hitchcock under certificates 1 and 2, and that at the time of the transfer to Creighton of said shares he knew that the stock had not been paid for by said Hitchcock, and also knew, when he purchased the same, of the alleged fraudulent representations made to and perpetrated upon the plaintiff by said Hitchcock and The Manitou Bathing Company, such claim of ownership by Creighton would be evidence of fraud. It is not alleged nor proven that Hitchcock did not cause the real estate to be conveyed to the company before he assigned the stock, or it came into the hands of Creighton. The evidence shows that when Creighton was first elected director by the use of that stock, it was voted by his assignor, the assignee of said Hitchcock, and that at the time he claimed to be the owner thereof and voted it, it had been duly assigned and *132 issued to him. Furthermore, the complaint alleges, and the evidence shows, that another suit, to-wit, suit No. 8046, had been prosecuted in the same court, in which the parties to this suit, or their privies, were parties, and in which the allegations were the same as the allegations made in this suit relative to the treasury stock, and also to. said 56,000 shares of stock, and in which one of the issues made was ■ that said 56,000 shares had not been paid for by Hitchcock, and was invalid, and that Hitchcock’s assignment thereof was also invalid. The evidence shows that after full trial, judgment was rendered against said Hitchcock for $24,000, .to be paid to said The-Manitou Bathing Company, on an accounting for the stock as well as other funds, but which did not purport to invalidate the original issue, nor the subsequent assignment of said stock, nor enjoin the transfer thereof. '.Therefore, in the present state of the record, the presumption must be indulged that the'money judgment settled all issues, including the prayer for permanent injunction, and left the stock .outstanding in the hands of Hitchcock’s assignees, including Creighton,, valid, at least to the extent that such assignees had the right to vote the stock. In the condition of the pleading and proof, the submission of that question to the jury was error.
Moreover, although plaintiff was a director, he did not at any time obj ect to Creighton’s acting as director or officer on the ground that he was not qualified by the amount of his stock-holding. Is he not now estopped from objecting on that ground ? — Cook, Stock & Stockholders, section 523, p. 851.
Again, the jury were instructed that if they believed that “all of the foregoing matters and things,” being all the matters and things assumed to have been set forth in the complaint, were done by or with “the knowledge and consent of the said Creighton and the said'company, and with the intent to defraud the said plaintiff, and in' furtherance of the false and fraudulent representations made to *133 plaintiff by said Hitchcock, and The Manitou Bathing Com- • pany, if any were made, and in furtherance of the fraud alleged to have been practiced upon him by the said Hitchcock and The Manitou Bathing Company, if any there was,” etc., they should find for the plaintiff. For reasons already given, this portion of the instruction of itself would be quite sufficient to require a reversal. We doubt whether many, if any, of the matters alleged as the fraud of Hitchcock are material or competent to sustain the cause of action against fendants upon which judgment was rendered.
We think the court committed error in giving instruction 10, in that it did not give the proper measure, or any measure, of damages. That instruction is as follows:
“If you find for the plaintiff, you will assess his damages at such sum as you may find has been proven by the evidence, so as to fully compensate him for the damage sustained, and no more, and not in any event to exceed the sum of $40,000.”
The law seems to be settled in this jurisdiction that in cases of this character, where a definite rule for the measure of damages can be given, it is error in the court not to instruct the jury as to such rule. — Mustang Res. Co. v. Hissman, 49 Colo. 308, 112 Pac. 800; Colo. Spgs. Co. v. Albrecht, 22 Colo. App. 201, 123 Pac. 957. In the complicated and confused state of the pleadings and record, it is argued that three causes of action are included in one count of the complaint, namely, (1) an action for breach of express contract, (2) an action for damages for fraud and deceit practiced by Hitchcock on the plaintiff, of which defendants had knowledge, (3) conversion of plaintiff’s property by defendants. Under the first cause of action it is clear that the measure of damages would be the value of the capital stock in the new company, which plaintiff alleges he was to receive under the contract. Under the second cause of action, the measure of damages would seem to be the difference between the actual value of the stock *134 and what it would have been worth if the representations made by Hitchcock had been true. — Thompson, Corp., 2nd ed., vol. 1, p. 700, and cases cited; Smith, Law of Fraud, section 299; Van de Wiele v. Garbade, 60 Ore. 587, 120 Pac. 752. Under the third cause of action, the measure of damages would be the value of the property converted by the defendants; but in this case the property alleged to have been converted was the property of The Manitou Bathing Company, in which the plaintiff was a stockholder. The value of plaintiff’s interest therein would be the value of his proportion (measured by his stock-holding) o.f the net assets of The Manitou Bathing Company after all its debts had been paid. These contentions make manifest the necessity for instruction as to measure of damages. If we were to concede — which we do not — that the evidence was sufficient to justify instructions as to measure of damages on the last two causes of action, nevertheless, no rule for the measure of damages having been given, but the jury left to determine the limits of compensation from conjecture, without reference to legal rules, the verdict cannot be sustained.
Attention has been called to instruction No. 7, under which the jury were not permitted to consider the negotiations looking toward the making of the agreement alleged in the complaint, except for the purpose of such light as it might throw upon the acts of the defendants alleged by the plaintiff to have been done for the purpose of defrauding him. It is plainly shown by the answer made to special interrogatory 2 that the jury not only considered said negotiations for other purposes, than that directed, but that their decision of the entire -question as to whether plaintiff was damaged at all by defendants’ acts was based upon such negotiations. Special interrogatory No. 2 propounded to the jury, and the answer thereto, are as follows:
“Question 2. If you find from the evidence that the plaintiff Campbell has been damaged by the acts and doings *135 of the defendant Creighton and the defendant Mineral Springs Company, or either of them, how was the said Campbell damaged?
Answer. Plaintiff Campbell was damaged by relying on representations made to him by Creighton and J. K. Vanatta looking to an equitable settlement of the Manitou Bathing Company and refrained from presenting or pressing his claims against said company in court.”
As has been said, consideration of the agreement alleged was taken from the jury. >That agreement, however, so far as established, consisted of the negotiations and representations “looking to an equitable settlement” of all matters concerning The Manitou Bathing Company. There fore, it appears by said answer that the jury not only considered the negotiations for other purposes than that permitted, but that they treated such negotiations as equivalent to an agreement under which the plaintiff had a right to refrain from pressing his claims, which was directly prohibited by such instructions. Moreover, a representation which constitutes a promise to do something in the future will not sustain an allegation of fraud and deceit. — Smith, Law of Fraud, section 7. Furthermore, it would be absolutely impossible for the jury, or any one else at this stage of the proceedings, to determine what'result would have followed the pressing of such claims against the assignment, and therefore there could be therein no foundation for estimating the damages.
We have considered only a few of the objections urged, but we think it unnecessary to mention others.
In this case, as in many others, it is strongly urged that, although errors may have been committed, nevertheless, as it appears that the verdict is not excessive, and that substantial justice has been done, the judgment should not be reversed. But, although we may agree that the verdict is not in apparent excess of the plaintiff’s probable loss sustained by reason of his trusting in Hitchcock’s repre *136 sentations, yet it is impossible to concede, under the state of the record, that Creighton can be held liable personally for Hitchcock’s fraud. Nothing short of actual participation in such fraud, or its legal equivalent, can make him so liable. His status as a particeps crirmnis is not shown.
Moreover, the civil code and the rules of practice adopted by the Supreme Court are intended to provide, and do provide, ah orderly procedure designed for the purpose of making up issues for trial and for the conduct of trials. The right to insist upon a substantial compliance with these provisions of the code and rules is the right of every litigant, and the denial of such right is. the denial of a substantial right. In this case it is clear that plaintiff and defendants alike construed the issues made to be upon the alleged agreement, and defendants formulated their answer to meet that issue, and that only. We think that was the true construction. But when the court took that issue from the jury and directed the trial to proceed upon other issues not understood by the parties to have been made, the trial ceased to be an orderly presentation of evidence essential to the controversy, to such an extent that the learned trial judge, in desperation, declared that he would no longer attempt to limit the introduction of testimony to that which was admissible, but would let the parties “make it as ridiculous as possible on both sides.” It' would be difficult to conceive of a more chaotic and unsatisfactory state of the record than is here presented. This condition is emphasized by the defendants’ answer, formulated, as we have said, to meet certain issues, and under which no agreement was reached by court and counsel as to what allegations of the complaint were denied or put in issue, and by the fact, clearly outstanding, that the plaintiff had little first-hand knowledge of the testimony that was necessary to support his complaint in the many matters affecting the defendants) Much of the testimony which he did give was elicited by his counsel only after verbal castigation and the pressure of *137 leading questions, and which upon cross-examination was admitted to be based upon information derived from his attorney.
As to the cross-errors assigned, we think the court could not do otherwise than withdraw from consideration the agreement as it was alleged; but we are not satisfied that the court might not have submitted to the jury the question as to whether some agreement, consisting of a written proposal submitted by Creighton, and its verbal acceptance, with modifications, understood by both, did not constitute an agreement, or understanding, upon which both parties proceeded, and in reliance upon which plaintiff did in fact permit the assignment and the sale thereunder to proceed, not only without objection, but with his full consent and approval, and by reason of which the defendants in this case may be under obligations, in equity, to share with defendant the capital stock of the defendant company. We think the court did not err in charging the jury that for the purposes of this action, the assignment made for the benefit of creditors and the 'Claims presented therein and allowed must be regarded as valid, whatever may be the rule in an action under the statute of frauds.
If this suit were in the nature of a creditor’s bill, or to hold the defendants to an accounting as trustees, or a proceeding to hold the property involved to satisfy any judgment that might be obtained by plaintiff against Hitchcock and The Manitou Bathing Company, and all necessary parties were parties hereto, an entirely different question would be presented as to the materiality and effect of the evidence. The record shows that proceedings of that nature were instituted before the instant suit was begun, and are still pending; but they have not been consolidated with this, and cannot be considered as affecting the present ease.
■The judgment is reversed and the cause remanded for further proceedings in conformity with the views herein expressed.
*138 Hurlbut, J., and Bell, J., concurring.
Cunningham, P. J., not participating.

Reversed and Remtanded.